1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**United States District Court**

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JANET PEREZ-ENCINAS and WENDY PEREZ,

           Plaintiffs,

  v.

AMERUS LIFE INSURANCE CO.,

           Defendant.
_____/

No. C 05-05112 CRB

**MEMORANDUM AND ORDER**

    Plaintiffs Janet Perez-Encinas and Wendy Perez filed this action against defendant AmerUs Life Insurance Company, formerly known as Central Life Assurance Company, for breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiffs claim that defendant improperly made payments to their estranged father that should have been sent to them under an annuity policy.   Now pending before the Court is defendant's motion for summary judgment on the grounds that the claims are time barred and that defendant made the annuity payments in accordance with the terms of the policy.  After carefully considering the parties' memoranda and supporting exhibits, and with the benefit of oral argument, defendant's motion is hereby GRANTED.

//

//

**United States District Court**

For the Northern District of California

1

## BACKGROUND

2          In 1988, attorney Gene A. Cain and his son, attorney Stephen A. Cain, settled a

3   wrongful death lawsuit regarding plaintiffs' mother. First Am. Compl., ¶¶ 10, 15.  Cain used

4   a part of the settlement to purchase an annuity for various members of the Perez family.[1]  Id.

5   at ¶ 12-13.  At the time of this transaction, Perez-Encinas was 12 years old and Wendy Perez

6   was 9.  Id. at ¶ 10.

7          According to Gene Cain, he intended the annuity to have three distinct components.

8   Decl. of G. Cain, ¶ 2.  First, Juan Perez, plaintiffs' father, was to be paid $900 per month for

9   12 years, at which time his youngest daughter, Alicia Perez, would turn 18 years old.  Id.

10  Second, the three daughters were to be paid $10,000 apiece on their respective 18th, 19th,

11  20th, and 21st birthdays.  Id.  Third, the daughters were to receive $75,000 on their

12  respective 30th birthdays.  Id.  The insurance company disputes this characterization, stating

13  that the contract designated only a single payee, Gene Cain, who would receive all of the

14  payments unless he designated or assigned the payments to another person in writing.  See

15  Decl. of V. Cox, ¶ 2-3; Def.'s Ex. B, p. 4.

16         Gene Cain purchased the annuity from defendant through Patrick Chambers, who was

17  employed by Selective Settlements NW.[2]  Decl. of G. Cain, ¶ 3.  Cain claims that he relayed

18  to Chambers the above objective.  Id. at ¶ 5.  The annuity application and the annuity policy,

19  which together form the annuity contract, list Gene Cain as the "Annuitant" and "Owner."

20  Def.'s Ex. A and B.  Juan Perez and the three daughters are listed as "Beneficiar[ies]" in the

21  application.  Def.'s Ex. A.  The daughters are specifically identified as the beneficiaries of

22

23

_____

24         [1]The plaintiffs are Janet Perez-Encinas, formerly known as Janet Hernandez, and
    Wendy Perez.  The claims of the third daughter, Alicia Perez, were dismissed pursuant to a
25  stipulation because she received the disputed payments.  See Stipulations of Good Cause;
    Decl. of R. Ergo, ¶  2.
26

27         [2]Plaintiffs submit evidence of what Chambers purportedly said to Cain during the
    application and negotiation of the annuity.  To the extent that it would be relevant, this
    evidence is inadmissible hearsay and is not considered by the Court.  The Court finds that
28  plaintiffs have not made a sufficient showing that Chambers was an agent of defendant;
    therefore, no hearsay exception applies.

**United States District Court**

*For the Northern District of California*

1 the $10,000 and $75,000 payments.  <u>See</u> Def.'s Ex. A.  Cain prepared an application for the

2 annuity with the help of Chambers.  Decl. of G. Cain, ¶ 5-6.

3      Gene Cain signed the application, which Chambers then submitted to defendant for an

4 underwriting decision.  <u>Id.</u> at ¶ 7.  Defendant approved the application and Cain then paid

5 over the balance of the settlement proceeds to defendant to secure the agreement.  <u>Id.</u> at ¶ 7;

6 Pls.' Ex. 2.  Cain later received a copy of the annuity contract in the mail.  Decl. of G. Cain, ¶

7 7; Def.'s Ex. B.  Under the terms of the policy, Cain had 10 days from his receipt of the

8 contract during which to cancel the contract and obtain a full refund.  Def.'s Ex. B at 1.

9      Defendant sent the first $900 monthly support check due under the annuity to Cain.

10 Decl. of Gene Cain, ¶ 8.  Gene Cain called defendant, which advised him that in order to

11 have the monthly checks sent directly to Juan Perez, Cain would have to send a letter to

12 defendant instructing defendant to change draft payee to Juan Perez.  <u>Id.</u>  Cain dispatched the

13 requested letter, dated July 20, 1988 directing that "all further checks due" be made out to

14 Juan Perez.  Def.'s Ex. C.  Although Cain states that he never intended his letter as an

15 assignment of plaintiffs' rights under the annuity, defendant interpreted the letter as such an

16 assignment to Juan Perez.  Decl. of G. Cain, ¶ 9; Decl. of V. Cox, ¶ 5-6.  Thereafter, the $900

17 monthly payments went to Juan Perez, as did the $10,000 payments Cain contends were

18 intended for plaintiffs.  First Am. Compl., ¶ 14; Decl. of V. Cox, ¶ 6.

19      In November 2002, plaintiff Perez-Encinas learned from Stephen Cain, for the first

20 time, the specific financial arrangements stemming from her mother's death.  First Am.

21 Compl. ¶ 15; Decl. of J. Hernandez, ¶¶ 3, 6.  Likewise, plaintiff Perez had never known

22 about the arrangements until she learned of them from Perez-Encinas.  Decl. of W. Perez, ¶

23 3.  Neither of the plaintiffs had learned of the annuity from their father, from whom they

24 were separated in 1990 by Child Protective Services, which determined that Juan Perez was

25 unable to care for his children.  First Am. Compl., ¶ 14; Decl. of J. Hernandez, ¶ 2; Decl. of

26 W. Perez, ¶ 2.  Perez-Encinas is now 30 years old; Wendy Perez is 27.  <u>See</u> Def.'s Req. for

27 Judicial Notice, Ex. A, ¶ 7.

28

1    Gene Cain sent a letter to defendant in January 2003 instructing defendant not to send

2  any more money to Juan Perez and instead to pay the plaintiffs.  First Am. Compl., ¶ 17;

3  Decl. of G. Cain, ¶ 11; Pls.' Ex. 4.  Thereafter, defendant received a notarized affidavit from

4  Juan Perez relinquishing his right to the annuity payments.  Def.'s Ex. E.  Since 2003,

5  payments that have come due under the policy have gone to Alicia Perez ($10,000 paid on

6  June 15, 2004, Def.'s Ex. G) and plaintiff Encinas-Perez ($75,000 paid on December 13,

7  2005, Decl. of V. Cox, ¶ 12).

8                                   **PROCEDURAL HISTORY**

9    On September 27, 2005, plaintiffs Encinas-Perez, Wendy Perez and Alicia Perez filed

10  suit against defendant in Contra Costa County Superior Court.  That action stated causes of

11  action for (1) breach of contract; (2) declaratory relief; and (3) breach of the implied

12  covenant of good faith and fair dealing.  Plaintiffs also sought punitive damages.  On

13  December 9, 2005, defendant removed the action to this court on the basis of diversity

14  jurisdiction.  See 28 U.S.C. 1441(b).

15    On May 3, 2006, AmerUS filed this motion for summary judgment.  On May 30,

16  2006, at the request of plaintiffs' counsel and upon stipulation of the parties, the Court

17  agreed to continue the hearing on the defendant's Motion for Summary Judgment from June

18  9 to July 21, 2006.  On June 28, 2006, the Court denied a second request from plaintiffs'

19  counsel, upon stipulation of the parties, to continue the hearing date from July 21 to August

20  25, 2006.

21    Plaintiffs filed their Opposition one week late, on July 7.  On that same day, plaintiffs,

22  pursuant to stipulation with defendant, filed a First Amended Complaint and dismissed

23  without prejudice the claims of Alicia Perez.  The amended complaint also dropped

24  plaintiffs' request for declaratory relief relating to the $75,000 payments.  Accordingly, the

25  only remaining claims are compensatory damages of $40,000 each for Perez-Encinas and

26  Wendy Perez as well as punitive damages.  On July 14, 2006, defendant filed its Reply.  Oral

27  argument was held on July 21, 2006.

28  //

United States District Court

For the Northern District of California

4

**STANDARD OF REVIEW**

**I.     Legal Standard for Summary Judgment**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56 does not require that the relief granted to a successful movant always be dispositive of the full matter in controversy. A claimant may seek a summary judgment ruling "for a summary judgment in the party's favor on all or any part [of the claim] thereof," Rule 56(a), and a party defending a case may seek a ruling "in the party's favor as to all or any part [of a claim, counterclaim, or cross-claim] thereof." Rule 56(b).

A principal purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). A party moving for summary judgment that does not have the ultimate burden of persuasion at trial (here, defendants) has the initial burden of producing evidence negating an essential element of the non-moving party's claims or showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). If the moving party does not satisfy its initial burden, the non-moving party has no obligation to produce anything and summary judgment must be denied. Id. at 1102-03. If, on the other hand, the moving party has satisfied its initial burden of production, then the non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See id. at 1103. A genuine issue of fact is one that could reasonably be resolved in favor of either party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-50 (1986). A dispute is "material" only if it could affect the outcome of the suit under the governing law. Id. at 248.

//

//

*United States District Court*

*For the Northern District of California*

5

**United States District Court**

For the Northern District of California

## II.     Legal Standard for Interpreting Insurance Contracts under California Law

Under California law, interpretation of an insurance policy is a question of law. Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 1, 18 (1995); see Cal. Ins. Code § 101 (stating that annuities are regulated as life insurance). Whether a contract is ambiguous is also a matter of law. United States v. Sacramento Mun. Util. Dist., 652 F.2d 1341, 1343 (9th Cir. 1981). While insurance contracts may have special attributes, they are nevertheless contracts to which the ordinary rules of contract interpretation apply. Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1264 (1992).

The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the "mutual intention" of the parties. Waller, 11 Cal. 4th at 18 (internal citations omitted). The court must look first to the language of the contract in order to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it. Id. (citing Cal. Civ. Code § 1638; Reserve Ins. Co. v. Pisciotta, 30 Cal. 3d 800, 807 (1982)). In searching for a plain meaning, a court is to interpret the language of an agreement in its "ordinary and popular sense, unless used by the parties in a technical sense." Id. (citing Cal. Civ. Code § 1644) (internal quotation marks omitted). A policy provision will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable. Bay Cities Paving Grading, Inc. v. Lawyers' Mutual Ins. Co., 5 Cal. 4th 854, 867 (1993). Language in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract. Bank of the West, 2 Cal. 4th at 1265. Courts will not strain to create an ambiguity where none exists. Reserve Ins. Co., 30 Cal. 3d at 807.

Thus, if possible, intent is determined solely from the written provisions of the insurance policy. Waller, 11 Cal. 4th at 18; Cal. Civ. Code § 1639 (internal citation omitted). If the policy language is clear and explicit, it governs. Id. However, if this "plain meaning" approach fails to resolve the ambiguities, a court is to look at the objectively reasonable expectations of the policy holder. Montrose Chem. Corp. v. Admiral Ins. Co., 10 Cal. 4th 645, 666-67 (1995). Finally, if the "reasonable expectations" approach does not resolve the

ambiguity, the ambiguity is to be interpreted against the drafter (the insurer), since that party

caused the ambiguities to exist.  <u>AIU Ins. Co. v. Superior Court</u>, 51 Cal. 3d 807, 822 (1990)

(citing Cal. Civ. Code § 1654).

### DISCUSSION

### I.       Statute of Limitations

        Defendant argues that plaintiffs' claims for breach of contract and breach of the

implied covenant of good faith and fair dealing are time barred.  The statute of limitations on

a claim for breach of a written contract or breach of the implied covenant of good faith and

fair dealing is four years.  Cal. Code Civ. Proc. § 337(1); <u>Krieger v. Nick Alexander Imports,</u>

<u>Inc.</u>, 234 Cal. App. 3d 205, 220-21 (1991).  A third-party beneficiary is subject to the same

limitations period as the promisee to the contract that created the rights of the beneficiary.

<u>See Skylawn v. Superior Court</u>, 88 Cal. App. 3d 316, 319 (1979); <u>see also</u> <u>Sanders v. Am.</u>

<u>Cas.</u>, 269 Cal. App. 2d 306, 310 (1969).  All parties agree that the most recent payment that

allegedly gave rise to the breach was made on September 22, 1999, more than four years

prior to September 27, 2005, the date upon which this action was filed.

        A cause of action for breach of contract accrues at the time of the breach of contract,

and the statute of limitations begins to run at that time regardless of whether any damage is

apparent or whether the injured party is aware of his right to sue.  <u>Niles v. Louis H. Rapoport</u>

<u>& Sons, Inc.</u>, 53 Cal. App. 2d 644, 651 (1942); <u>Neel v. Magana, Olney, Levy, Cathcart &</u>

<u>Gelfand</u>, 6 Cal. 3d 176, 187 (1971) ("The plaintiff's ignorance of the cause of action . . . does

not toll the statute.").  However, "[t]he harshness of this rule has been ameliorated in some

cases where it is manifestly unjust to deprive plaintiffs of a cause of action before they are

aware that they have been injured." <u>Moreno v. Sanchez</u>, 106 Cal. App. 4th 1415, 1423

(2003).  Under the "discovery rule" recognized by California courts, a cause of action

accrues when the plaintiff discovers or could have discovered, through the exercise of

reasonable diligence, all of the facts essential to his cause of action.  <u>April Enterprises, Inc. v.</u>

<u>KTTV</u>, 147 Cal. App. 3d 805, 826 (1983).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

California courts have long applied the delayed discovery rule to claims involving fraud, difficult-to-detect injuries, or the breach of a fiduciary relationship.  See Moreno, 106 Cal. App. 4th at 1423-1424; see also Neel, 6 Cal. 3d at 190 (holding that in an action for professional malpractice against an attorney, the cause of action does not accrue until the plaintiff knows, or should know, all material facts essential to show the elements of that cause of action).  Traditionally, however, the discovery rule had not been held applicable to breach of contract actions except in cases involving fraud or misrepresentation.  See, e.g., Watts v. Crocker-Citizens Nat'l Bank, 132 Cal. App. 3d 516 (1982) (fraud); Balfour, Guthrie & Co. v. Hansen, 227 Cal. App. 2d 173 (1964) (misrepresentation).  In April Enterprises, the court extended the discovery rule beyond the plaintiff's breach of fiduciary duty cause of action to encompass its breach of contract action as well.

In April Enterprises, the California Court of Appeal first applied the discovery rule to a breach of contract action not involving fraud, holding that the rule was properly applied to "breaches which can be, and are committed in secret and, moreover, where the harm flowing from those breaches will not be reasonably discoverable by plaintiffs until a future time." 147 Cal. App. 3d. at 832.  Twenty years after its decision in April Enterprises, the Court of Appeal revisited its earlier holding.  Gryczman v. 4550 Pico Partners, Ltd., 107 Cal. App. 4th 1 (2003).  Expanding on its decision in April Enterprises, the Court of Appeal noted that it had applied the discovery rule in that earlier breach of contract action because it found that "[a] common thread seems to run through all the types of actions where courts have applied the discovery rule." Id. at (citing April Enterprises, 147 Cal. App. 3d at 831).  The Gryczman court identified three characteristics of appropriate applications of the discovery rule: (1) "[t]he injury or the act causing the injury, or both, have been difficult for the plaintiff to detect"; (2) "the defendant has been in a far superior position to comprehend the act and the injury"; and (3)  "the defendant had reason to believe the plaintiff remained ignorant he had been wronged." Id.  The court emphasized that two overarching principles guide a court in assessing whether the discovery rule should apply in a given case.  First, "plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed." Id. at

5-6.  Second, "defendants should not be allowed to knowingly profit from their injuree's ignorance."  Id.

Here, plaintiffs did not learn about their potential entitlement to the $10,000 annuity payments until November 2002, when plaintiff Janet Perez-Encinas spoke with Stephen Cain on the telephone.  Further, Perez-Encinas and her sister were removed from their father's care in 1990, when he was deemed unfit to care for them, and therefore never knew that he was receiving the $10,000 payments.  While the Court is sympathetic to plaintiffs' claims, the Court finds no basis upon which to apply the discovery rule.

This case does not involve a "secretive breach" similar to that in April Enterprises. The fact that plaintiffs simply did not know about their alleged right to payments under the annuity does not, by itself, convert the alleged breaches into secretive breaches.  Nor does this case concern a breach that was fraudulently concealed or misrepresented by defendant. Defendants did nothing to hide, mask, or keep secret the terms of the annuity, which were well-known and available in written form to the parties involved.

Nor is the discovery rule applicable under Gryczman.  In Gryczman, the dispute surrounded a right of first refusal to purchase real property that required the defendant to notify the plaintiff if a bona fide offer was made on the property.  107 Cal. App. 4th at 3-4. There, the plaintiff happened to learn that the property had been conveyed to a third party only when he drove by the property, more than four years after the property was sold.  Id. at 4.  In concluding that the discovery rule should apply in that case, the court emphasized that the lack of notice was not only the cause of plaintiff's failure to learn of the injury but was in fact the conduct that caused the injury in the first instance.  Id. at 6.  The court also noted that, pursuant to the bargained-for terms of the contract, the defendant had a duty to notify the plaintiff when an offer, if any, was made.  Id.

Here, however, the alleged breach of contract was not difficult to detect.  Plaintiffs' rights under this contract, if any, flowed directly through the owner and annuitant, Gene Cain, who knew the precise dates upon which the predetermined payments were scheduled to be made.  Second, defendant here was not in a far superior position to comprehend the

United States District Court

For the Northern District of California

alleged breach.  To the contrary, the defendant believed that it was faithfully executing the annuity contract when it made the payments to Juan Perez.  In fact, defendant only formally became aware of a potential breach when Stephen Cain and Gene Cain contacted the carrier after learning that plaintiffs had not received the $10,000 payments.  Finally, defendant did not have any basis for believing that plaintiffs remained ignorant about the alleged breaches. In truth, Gene Cain was in a superior position to comprehend the alleged breach when he was effectively put on notice of defendant's understanding of the contract when it mailed him the first $900 check.   Unlike in <u>Gryczman</u>, where the contract required defendant to give notice to plaintiff and that failure prevented plaintiff from discovering the breach, the only relevant duty in the present case was the fiduciary duty that existed between attorney Gene Cain and plaintiffs, his clients.[3]

In addition, plaintiffs have failed to show that the "overarching principles" noted in <u>Gryczman</u> support the application of the discovery rule in this case.  107 Cal. App. 4th at 5-6. First, while plaintiffs have submitted evidence that circumstances prevented them from knowing about the alleged breach, defendant is not responsible for the existence of those circumstances.  Second, plaintiffs have made no showing that defendant in this case has sought to knowingly profit from such ignorance.  In fact, defendant's best result from this litigation is a determination that it does not have to make certain annuity payments *twice*.

Finally, this case does not involve the classic kind of fiduciary relationship between the parties that gives rise to the application of the discovery rule.  <u>See</u> <u>April</u>, 147 Cal. App. 3d at 827-28.  Though California cases have recognized a "special relationship" between an insurer and an insured, they have rejected the existence of a fiduciary relationship between insurer and insured.  <u>Vu. v. Prudential Prop. & Cas. Ins. Co.</u>, 26 Cal. 4th 1142, 1150-51 (2001) ("The insurer-insured relationship, however, is not a true "fiduciary relationship" in

---

[3]Based on the fact that Gene Cain's name appears on the papers in this lawsuit, the Court is concerned that plaintiff's attorneys have failed to uphold their obligations under this fiduciary duty.  Accordingly, the Court hereby orders Hugo Torbet, who represented plaintiffs at oral argument, to provide copies of this opinion to his clients, Janet Perez-Encinas and Wendy Perez.

United States District Court

For the Northern District of California

1  the same sense as the relationship between trustee and beneficiary, or attorney and client.")

2  To be sure, an insurer's obligations under this "special relationship" are greater than those of

3  a party to an ordinary commercial contract. <u>Chase v. Blue Cross of Cal.</u>, 42 Cal. App. 4th

4  1142, 1152 (1996). In particular, an insurer is required to "give at least as much

5  consideration to the welfare of its insured as it gives to its own interests." <u>Egan v. Mutual of</u>

6  <u>Omaha Ins. Co.</u>, 24 Cal. 3d 809, 818 (1979). This duty, however, generally results from the

7  unique nature of insurance policy contracts, which are often not bargained-for and usually

8  quite complicated. <u>Chase</u>, 42 Cal. App. 4th at 1152. To that end, a traditional insurer

9  maintains "the duty reasonably to inform an insured of an insured's rights and obligations

10  under the insurance policy." <u>Davis v. Blue Cross of N. Cal.</u>, 25 Cal. 3d 418, 428 (1979).

11  Here, the relevant contract is a simple eight-page document that was based on an application

12  from a trained lawyer, Gene Cain. Similar to life insurance policies, the insured's rights were

13  clear and well-established from the outset. Accordingly, plaintiffs' reference to the special

14  relationship between the insured and the insurer is inapposite here, and therefore does not

15  invoke the application of the discovery rule.

16        For the foregoing reasons, the Court finds that the discovery rule is not applicable in

17  this case. Plaintiffs' suit was filed in September 2005, more than six years from the date of

18  defendant's most recent alleged breach. Because the four-year statute of limitations has not

19  been tolled, plaintiffs' claims are time barred. Accordingly, defendant's motion for summary

20  judgment is GRANTED.

21  **II.**      **Plaintiffs' Breach of Contract Claim**

22        Even if the plaintiffs' claims are not barred by the four-year statute of limitations, they

23  nevertheless fail as a matter of law.

24        The essential elements of a breach of contract action are: (1) the existence of a

25  contract; (2) the plaintiff's performance of the contract or excuse for nonperformance; (3) the

26  defendant's breach; and (4) the resulting harm to the plaintiff. <u>See</u> <u>Careau & Co. v. Sec. Pac.</u>

27  <u>Bus. Credit, Inc.</u>, 222 Cal. App. 3d 1371, 1388 (1990).

28

1  In this case, the contract in question is an annuity. "An annuity is a contract between a

2  seller (usually an insurance company) and a buyer (usually an individual, also referred to as

3  the 'annuitant') whereby the annuitant purchases the right to receive a stream of periodic

4  payments to be paid either for a fixed term or for the life of the purchaser or other designated

5  beneficiary." Patenaude v. Equitable Life Assur. Soc'y of the United States, 290 F.3d 1020,

6  1027 (9th Cir. 2002) (internal quotation and citation omitted).

7  Defendant argues that it committed no breach of contract because it fully complied

8  with the straightforward terms of the contract.[4]  In the application, Gene Cain designated

9  himself as the "Owner" and "Annuitant" of the annuity. By the terms of the annuity, Cain, as

10  the annuitant, was entitled to the annuity payments.[5]  Plaintiffs are listed as "Beneficiar[ies]"

11  of the various payments, and under the plain meaning of the contract, have no right to receive

12  any of the contract benefits until either the death of the annuitant or an assignment of the

13  contract to them by the annuitant. See Def.'s Ex. B at 4. ("If two or more persons are named

14  [as beneficiaries], those surviving the Annuitant will share equally unless otherwise stated.");

15  and id. (providing that "[b]enefit payments will be made to the Annuitant unless otherwise

16  designated in the application."). Generally accepted principles of insurance law further

17  support these definitions:

18  The annuity "beneficiary," apart from the annuitant who receives
his periodic payments during his lifetime, usually refers to the
19  recipient of the benefits under an annuity contract after the
annuitant dies. He is, in general, the beneficiary of the refund
20  portions of the annuity contract. A beneficiary, other than the
annuitant, ordinarily has no absolute right in an annuity contract,
21  since a living annuitant who is the owner and has a right to any
payments due under the contract has both the rights to assign the
22  contract (if the contract does not prohibit assignment), and if no
irrevocable beneficiary designation is in place, to change the
23  beneficiary.

26  [4]According to an integration clause in the application, the three-page application and
five-page contract constitute the entire agreement between the parties. Def.' s Ex. A.

27  [5]According to the policy, defendant " agrees to pay the Benefit to the Annuitant as
28  provided on page 3 of this contract." Def.' s Ex. B at 1. On page 3, Gene Cain is designated
as the annuitant. Id. at 3; see also id. at 4 (" Benefit payments will be made to Annuitant
unless otherwise designated in the application.").

12

4-10 The Law of Life and Health Insurance § 10.04 (Matthew Bender & Co. 2005).  See also 3-20 California Insurance Law & Practice § 20.20 (the annuitant is the recipient in an annuity policy); 3-20 California Insurance Law & Practice § 20.21 ("An annuity certain makes periodic payments to the annuitant for a specified term without regard to the annuitant's actual life or death.  If the annuitant dies prior to the expiration of the specified term, the payments continue to the annuitant's beneficiary."); and 4-10 The Law of Life and Health Insurance § 10.02 ("When an annuity contract is purchased, an insurer basically collects money from an annuitant and then liquidates its obligation simply by making stipulated payments to the annuitant.")

Plaintiffs argue that the annuity is ambiguous because Gene Cain allegedly designated plaintiffs to receive the disputed payments when he listed them as beneficiaries in the application.  Plaintiffs state that Gene Cain intended for the word beneficiary to carry a different meaning from the meaning spelled out in the contract; to wit, that a beneficiary is an individual who receives the benefit of the contract.  See Restatement 2d of Contracts, § 2 (stating that "where performance will benefit a person other than the promisee, that person is a beneficiary").

In light of the clear definition of the term "beneficiary" in the contract, the Court is unpersuaded by plaintiffs' argument.  Taken out of the context of this particular contract, the Court recognizes that a layperson could reasonably interpret the word beneficiary as plaintiffs define it.  But under the principles of insurance contract interpretation, the Court must interpret language in the context of the entire contract, not in the abstract.  See Bank of the West, 2 Cal. 4th at 1265.  Further, the word beneficiary as used here is not ambiguous.  See Bay Cities Paving Grading, Inc., 5 Cal. 4th 854, 867 (1993) (stating that a term is generally considered to be ambiguous if two reasonable yet differing definitions can be applied).  The contract states that payments go not to the beneficiary but to the annuitant.  Even if the money was intended for the benefit of the plaintiffs, the policy plainly states that the rights of the beneficiaries do not vest until the death of the annuitant or until such beneficiaries are assigned rights under the contract.

United States District Court

For the Northern District of California

1    Unlike the average insurance policy contract, this annuity contract is short and clear.

2    Moreover, Gene Cain, the applicant and annuitant, is not an unsophisticated layperson;

3    rather, he is a lawyer purportedly trained to read any contract to which he signs his name.

4    See AIU Ins. Co., 51 Cal.3d at 823 (noting that courts may consider the legal sophistication

5    of a person entering an insurance contract in interpreting the resulting contract).

6    Furthermore, even if Gene Cain neglected to read the final contract which defined the rights

7    of beneficiaries under the agreement, and even if his intention was to designate the individual

8    Perez family members to be the payees of the annuity, he was effectively placed on notice

9    that defendant did not interpret its obligations in the same manner when he received the first

10    $900 payment that he believed should have been sent to Juan Perez.  Despite this red flag,

11    Cain apparently did not make efforts to ensure that the annuity was structured as he claims he

12    had intended it to be.  Instead, he merely sent a letter to defendant directing the defendant to

13    change the annuity draft payee to Juan Perez and make out "all further checks due" to Perez.

14    To now argue, as Gene Cain does, that the insurance company breached its contract after it

15    followed his directions is unavailing.

16    Thus, the Court concludes that the contract is unambiguous and that its meaning is

17    facially apparent.  Because the express language of the contract governs, the Court need look

18    no further than the four corners of the fully integrated annuity contract in order to discern the

19    meaning of the document.  Accordingly, plaintiffs' breach of contract claim fails as a matter

20    of law because defendant satisfactorily performed its obligations under the contract.

21    Thus, defendant's motion for summary judgment as to the breach of contract claim is

22    GRANTED.

23    **III.    The Implied Covenant of Good Faith and Fair Dealing**

24    Under California law, all insurance contracts contain an implied covenant of good

25    faith and fair dealing.  Egan, 24 Cal. 3d at 818.  A breach of the underlying contract is not

26    necessary to establish a bad faith claim.  See Carma Developers (Cal.), Inc. v. Marathon Dev.

27    Cal., Inc., 2 Cal. 4th 342, 372-73 (1992).  In order to establish a breach of the implied

28    covenant of good faith and fair dealing, a plaintiff must show that benefits were denied and

that the reason for the denial was unreasonable or without proper cause.  See <u>Love v. Fire</u> <u>Ins. Exch.</u>, 221 Cal. App. 3d 1136, 1151 (1990).  A defendant is entitled to summary judgment if it can show that there was a genuine dispute as to coverage such that the denial could be termed reasonable.  <u>Congleton v. Nat'l Union Fire Ins. Co.</u>, 189 Cal. App. 3d 51, 59 (1987) (holding that the ultimate test of liability is "whether the refusal to pay policy benefits was unreasonable") (internal quotations and citations omitted).

Here, as discussed above, because the Court finds that defendant did not breach the contract, it further concludes that it did not act in bad faith.  Even if defendant did breach the contract, however, it acted reasonably in making payments to Juan Perez.  Defendant first sent payments to the annuitant, Gene Cain, which was not an unreasonable interpretation of the contract.  When Cain later sent a letter to defendant directing it to send "all further checks due" to Juan Perez, the company complied with Cain's instructions and did not unreasonably interpret that as an assignment of his rights.

This is not the more typical case of stonewalling by an insurance company so as to avoid its duty to make payments and thus reap some benefit for itself.  Quite to the contrary, defendant has paid out on the policy.  The issue concerns whether it sent those payments, in error, to a father rather than his children.  Defendant realized no benefit by sending the $80,000 at issue to Juan Perez as opposed to plaintiffs.  Because defendant did not act unreasonably in this case, plaintiffs' claim fails as a matter of law and defendant's motion for summary judgment is GRANTED.

**III.   Punitive Damages**

Before a plaintiff may recover punitive damages in a bad faith action against an insurer, he or she must first establish by clear and convincing evidence that the insurer acted with malice, oppression or fraud.  <u>Lunsford v. Am. Guar. & Liab. Co</u>, 18 F.3d 653, 656 (9th Cir. 1994) (citation omitted); <u>see also</u> <u>Tomaselli v. Transamerica Ins. Co.</u>, 25 Cal. App. 4th 1269, 1286-88 (1994).  This higher clear and convincing evidentiary standard applies at every stage of the litigation process, including summary adjudication.  See <u>Basich v. Allstate</u> <u>Ins. Co.</u>, 87 Cal. App. 4th 1112, 1121 (2001).  A plaintiff who is not able to survive summary

15

1  judgment on an insurance bad faith claim, is also unable to survive summary judgment on a
2  related claim for punitive damages.  Adams v. Allstate Ins. Co., 187 F. Supp. 2d 1219, 1231
3  (C. D. Cal. 2002).
4          In light of this Court's conclusion that defendant is entitled to summary judgment on
5  plaintiffs' breach of contract and breach of the implied covenant of good faith and fair
6  dealing claims, it necessarily follows the defendant is entitled to the same relief with respect
7  to the related punitive damages claim.  Thus, defendant's motion for summary judgment as to
8  punitive damages is hereby GRANTED.

9                                        **CONCLUSION**

10         For the foregoing reasons, defendant's motion for summary judgment is GRANTED
11 in its entirety both because plaintiffs' claims are barred by the statute of limitations and
12 because defendant properly performed its contractual obligations pursuant to the express and
13 unambiguous terms of the annuity.

14         **IT IS SO ORDERED.**

15
16
17 Dated: July 26, 2006                    _____
18                                         CHARLES  R. BREYER
                                          UNITED STATES DISTRICT JUDGE
19
20
21
22
23
24
25
26
27
28

*United States District Court*
*For the Northern District of California*